UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| LANTHEUS MEDICAL IMAGING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 10 Civ. **10 CIV 9371** <br><br> **COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT** <br><br> **JURY TRIAL DEMANDED** <br><br> ECF CASE |



Plaintiff, Lantheus Medical Imaging, Inc. (hereinafter "Lantheus") hereby alleges as follows for its Complaint against Defendant Zurich American Insurance Company (hereinafter "Defendant" or "Zurich").

### NATURE OF ACTION

1. This is a civil action for declaratory relief and money damages arising from Defendant Zurich's breach of its contractual obligation under an "all risks" property policy to indemnify Lantheus for lost business income and extra expense caused by physical loss and damage to, and the extended shutdown of, a nuclear reactor in Chalk River, Ontario (the "Chalk River Reactor"), which supplied a critical raw material used by Lantheus to manufacture radiopharmaceutical products.

2. Lantheus is a specialty pharmaceutical company that manufactures and distributes diagnostic medical imaging products. A critical ingredient in some of those diagnostic products is a fission-produced isotope called Molybdenum-99 ("Moly-99"). For many years, the Chalk

River Reactor, which is operated by Atomic Energy of Canada Limited ("AECL"), has been the principal source of Moly-99 used in the manufacture of medical imaging products sold by Lantheus. To protect itself against the risk that a suspension of operations at the Chalk River Reactor would adversely impact its revenues and profits, Lantheus purchased an "all risks" property insurance policy from Zurich that includes "contingent business interruption" ("CBI") coverage of up to $70 million for any business income losses sustained by Lantheus in the event a covered peril results in physical loss of or damage to the Chalk River Reactor or other "Contingent Properties" that manufacture materials essential to Lantheus's own manufacturing operations.

3. In May 2009, a leak of "heavy water" resulted in physical loss and damage to the Chalk River Reactor, which was forced to suspend operations until August 2010 while the damage was repaired. As a result of the shutdown of its principal supplier of Moly-99, Lantheus suffered substantial business income losses and incurred significant extra expense attempting to obtain alternate supplies of Moly-99. When Lantheus requested coverage for its CBI losses and contingent extra expense, Zurich refused to pay the claim, in breach of its obligations under the insurance policy.

4. Lantheus therefore seeks: (a) a declaration that the contingent business income loss, extra expense and other damages which it sustained as a result of the damage to the Chalk River Reactor are covered under the "all risks" policy it purchased from Zurich; and (b) money damages and other relief caused by Zurich's breach of its contractual obligation to cover the loss.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

6. Venue is proper in this District under 28 U.S.C. § 1391(a) and (c).

7. This Court has personal jurisdiction over Zurich because, during the relevant time period, Zurich was chartered in New York, maintained a substantial presence in New York, and was licensed to and did transact insurance business in New York.

## THE PARTIES

8. Plaintiff Lantheus is a Delaware corporation with its principal place of business in North Billerica, Massachusetts. Lantheus manufactures and distributes on a global basis various medical imaging products used by hospitals and radiopharmacies in the diagnosis of heart, vascular and other diseases. Lantheus's products include, *inter alia*: (i) TechneLite, a generator used to convert Moly-99 into technetium-based radiopharmaceuticals for nuclear medicine procedures, and (ii) Cardiolite, a technetium-based radiopharmaceutical used in myocardial perfusion imaging procedures to detect coronary artery disease. A key ingredient of the TechneLite generator and Cardiolite is Moly-99, which decays into technetium, the active component of Cardiolite.

9. Defendant Zurich is an insurance company chartered under the laws of New York, with its principal place of business in Schaumburg, Illinois. Zurich is licensed to transact business in New York and is engaged in the business of selling insurance policies.

## THE POLICY

10. Zurich sold an "all risk" property insurance policy to Lantheus, Policy Number ERP 5964139-01 (the "Policy"). The Policy was underwritten by Zurich in New York,

New York, and was in effect from January 8, 2009 to January 8, 2010. Lantheus paid over $400,000 in premiums for the Policy.

11. The Policy provides broad coverage for all risks of "direct physical loss of or damage to Covered Property caused by a covered cause of loss," unless the loss or damage is specifically excluded. The term "Covered Property" includes Lantheus's interest in buildings and structures as well as personal property at premises described in the Declarations Schedule. (Section I, Insuring Agreement).

12. The Policy also provides "Time Element" coverage, including "Contingent Business Income Loss" coverage, for lost income and Extra Expense "resulting from the necessary suspension of your business activities occurring at a premises described in the Declarations Schedule ... caused by a covered cause of loss to a Contingent Property...." The term "Extra Expense" is defined as "that amount spent to continue your business activities over and above the expense you would have normally incurred had there been no [covered] loss or damage." The term "Contingent Property" is defined to include, *inter alia*: "a. A property from which you or others on your account receive the delivery of manufactured materials or services if those materials or services are essential to the continuation of your business activities ...." Section IV.A.4 (Contingent Business Income Loss).

13. The Chalk River Reactor produces raw Moly-99, which is then refined and reprocessed by Nordion Inc. (formerly known as MDS Nordion Inc.) at its facility in Kanata, Ontario, Canada. The finished Moly-99 is then transported by air courier to Lantheus's manufacturing facility in North Billerica, Massachusetts, where the Moly-99 is used in the manufacture of TechneLite generators. The Nordion facility and the Chalk River Reactor are listed in Endorsement 6 of the Policy as Contingent Properties. Endorsement 6 also provides a

separate sublimit of $70,000,000 in CBI coverage to Lantheus for Contingent Business Income Loss and Extra Expense resulting from covered loss or damage to, and suspension of operations at, either or both of those Contingent Properties.

14. "Business Income Loss" includes "the reduction in Business Income less charges and expenses that do not necessarily continue during the suspension of ... business activities," and "any reasonable and necessary expenses" incurred "to reduce the amount of Business Income Loss." "Contingent Business Income Loss" is Business Income Loss resulting from physical loss or damage to a Contingent Property. The Policy also covers "Expenses to Reduce Business Income Loss," defined as "any necessary and reasonable expenses you incur ... to reduce the amount of Business Income Loss during the period of restoration," provided that such expenses do not exceed the amount of otherwise covered Business Income Loss that would have been payable. (Section IV.B.2).

15. The Policy's CBI coverage, once triggered by loss or damage to Contingent Property, extends to "actual Business Income Loss" sustained by Lantheus until the earlier of (1) "the date when the Covered Property should have been repaired, rebuilt or replaced with due diligence and similar quality"; or (2) "[t]he twenty-four (24) consecutive months immediately following the direct physical loss or damage." Section VII.B.31 (definition of "Period of Restoration").

16. Finally, in addition to covering the losses sustained by Lantheus during the Period of Restoration of damaged Contingent Property, the Policy's CBI coverage extends to any additional Business Income Loss Lantheus sustains after the end of the Period of Restoration until the earlier of (a) the date Lantheus could restore its own business activities, "with due diligence, to the condition that would have existed if no direct physical loss or damage

occurred" or (b) "[s]ixty (60) consecutive days after the date the property is actually repaired, rebuilt or replaced and your business activities are resumed." This additional period of supplemental CBI coverage is known as the "Extended Period of Indemnity." (Section IV.B.4).

## THE CHALK RIVER REACTOR SHUTDOWN

17. Upon information and belief, on or about May 15, 2009, a release of heavy water was detected within the Chalk River Reactor. AECL promptly shut down and defueled the reactor to conduct a comprehensive assessment of the source of the leak and to determine if repairs were necessary.

18. On information and belief, the assessment revealed that the leak likely had occurred when water and air were inadvertently introduced into the J-ring annulus, a space normally filled with carbon dioxide gas that is located between the reactor vessel and the light water reflector. On information and belief, the accidental intrusion of water and air into the annulus led to the formation of nitric acid that rapidly penetrated the aluminum wall of the reactor vessel.

19. On information and belief, the incursion of water into the annulus was caused by leakage from the light water reflector. On information and belief, the ingress of air into the annulus was caused by an unknown process that displaced the carbon dioxide normally present in the annulus. In the absence of these fortuitous events, the reactor vessel would not have been damaged and the heavy water leak would not have occurred.

20. On information and belief, as a result of the events set forth above, the Chalk River Reactor was forced to suspend operations for an extended period while AECL pursued comprehensive inspections, testing, repairs and remediation involving the damaged components of the reactor. Canadian regulators did not approve the repairs and authorize resumption of operations until July 2010, and the Chalk River Reactor was unable to resume

shipments of Moly-99 until August 18, 2010, more than fifteen months after the reactor had been shut down.

### THE IMPACT OF THE REACTOR SHUTDOWN ON LANTHEUS's BUSINESS

21. Prior to the reactor shutdown in May 2009, the Chalk River Reactor produced approximately 40% of the global supply of raw Moly-99 used in the production of technetium-based medical isotopes. The Chalk River Reactor also supplied the vast majority of the Moly-99 used by Lantheus to manufacture TechneLite generators.

22. The shutdown of the Chalk River Reactor resulted in a global disruption in the supply of Moly-99, and severely impacted Lantheus's sales, financial condition and cash flows. The loss of a reliable supply of Moly-99 led to increases in the cost of obtaining the limited amounts of Moly-99 that were available from alternate sources, and significantly curtailed the manufacture of TechneLite generators. The Moly supply shortages also had a negative impact on Lantheus's ability to supply other technetium-based medical imaging products, including Cardiolite, to hospitals and radiopharmacies.

23. As a direct consequence of the Chalk River Reactor shutdown, Lantheus lost substantial sales revenue, and experienced a substantial Business Income Loss covered under the Policy. Lantheus continued to sustain Business Income Loss (a) throughout the 15-month Restoration Period from May 15, 2009 until August 18, 2010, when the Chalk River Reactor resumed operations, and (b) throughout the 60-day Extended Indemnity Period commencing August 18, 2010, in that Lantheus's business had not returned to the condition that would have existed had no CBI loss occurred through at least the end of October 2010.

24. Lantheus also incurred substantial additional costs in the aftermath of the Chalk River Reactor shutdown attempting to obtain alternative supplies of Moly-99 from sources in Belgium and South Africa. These efforts were only partially successful, and

significantly increased the cost of obtaining Moly-99 in comparison with Lantheus's historical costs. For example, Lantheus incurred increased freight charges shipping Moly-99 to the United States from Belgium and South Africa. Moreover, because Moly-99 has a short half-life[1] (approximately 2.8 days), substantial amounts of Moly-99 are lost when it has to be purchased overseas and shipped to the United States. For these reasons, the effective price paid by Lantheus for Moly-99 during the period when operations at the Chalk River Reactor were suspended was significantly higher than the historical cost. Despite its efforts, Lantheus was unable to obtain sufficient quantities of Moly-99 to meet the existing market demand for TechneLite generators, Cardiolite and other medical imaging products, and was unable also to meet the supply volumes for those products set forth in its contracts with core customers.

25. The increased costs incurred by Lantheus in connection with its efforts to obtain alternate supplies of Moly-99 from other global sources constitute "Contingent Extra Expense" and "Expenses To Reduce Business Income Loss" and are covered under the Policy. Lantheus continued to incur these increased costs from May 2009 until August 2010, when the Chalk River Reactor resumed operations.

## ZURICH'S DISCLAIMER OF COVERAGE

26. Lantheus notified Zurich of the damage to the Chalk River Reactor and sought coverage for its ongoing CBI losses. Lantheus provided information and documents supporting its claim for Contingent Business Income Loss, Extra Expense and Expenses To Reduce Business Income Loss.

---

[1] The "half-life" of a radioactive material refers to the amount of time it will take for 50% of that material to decompose into other materials.

27.     On March 22, 2010, Zurich denied coverage for Lantheus's claim. Zurich asserted in its disclaimer letter that "[i]nasmuch as all of the available information indicates that the shutdown of the NRU Reactor was because of corrosion, an excluded cause of loss, Lantheus's Contingent Business Interruption and Extra Expense claim is not covered." Zurich did not identify or assert any other basis for the denial of Lantheus's insurance claim.

28.     Section III.B.5.b of the Policy excludes coverage for "[t]he effects or cause of ... [d]eterioration, depletion, rust, corrosion, erosion, loss of weight, evaporation or wear and tear...." The exclusion is qualified by an "ensuing loss" exception, which states:

> But if any of these results in a covered cause of loss, this exclusion does not apply to the loss or damage caused by the covered cause of loss.

29.     The referenced exclusion does not apply to Lantheus's CBI claim for multiple reasons, including: (i) the exclusion does not apply to Time Element losses, including CBI losses; (ii) the exclusion does not apply on the underlying facts, because neither the damage to the reactor vessel, the heavy water leak nor the ensuing loss was caused by corrosion; and (iii) even if the reactor vessel was damaged by corrosion, the "ensuing loss" exception quoted above applies to preserve coverage because the damage to the wall of the reactor vessel resulted in a covered ensuing loss.

30.     All conditions and requirements imposed by the Policy upon Lantheus, including payment of premiums and notice of claim, have been satisfied by Lantheus, have been waived by Zurich, are subject to estoppel against Zurich, or would, in any case, have been futile in light of Zurich's peremptory denial of Lantheus's claim.

31. Lantheus is entitled to full payment of its CBI losses, including its Contingent Business Income Loss, Extra Expense and Expenses To Reduce Business Income Loss, all of which are covered under the Policy.

## FIRST CLAIM FOR RELIEF:
## REQUEST FOR DECLARATORY JUDGMENT

32. Lantheus realleges and incorporates by reference paragraphs 1 through 31 of this Complaint as if set forth here in their entirety.

33. This is a request for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Lantheus seeks a judicial determination that the Contingent Business Income Loss, Extra Expense, Expenses To Reduce Business Income Loss and other damages sustained by Lantheus as a result of the physical loss and damage to, and fifteen-month shutdown of, the Chalk River Reactor are covered under the Policy and that Zurich is obligated to indemnify Lantheus for the full amount of such loss, damages and expenses.

34. Defendant Zurich has refused to acknowledge or perform its obligation to indemnify Lantheus for its losses, which are covered under the Policy.

35. An actual and justiciable controversy exists between Lantheus and Zurich with respect to Zurich's obligations to indemnify Lantheus under the Policy for losses resulted from loss or damage to, and suspension of operations at, the Chalk River Reactor. The controversy is of sufficient immediacy to justify the issuance of declaratory relief. The issuance of declaratory relief by this Court on disputed issues of coverage under the Policy will resolve some or all of the existing controversy between the parties.

## SECOND CLAIM FOR RELIEF: BREACH OF CONTRACT

36. Lantheus realleges and incorporates by reference paragraphs 1 through 35 of this Complaint as if set forth here in their entirety.

37. The losses sustained by Lantheus as a result of the Chalk River Reactor Shutdown are covered CBI losses under the Policy. Under the terms of the Policy, Zurich is obligated to indemnify Lantheus for its Contingent Business Income Loss, Contingent Extra Expense and Expenses To Reduce Business Income Loss, which were sustained by Lantheus as a result of covered physical loss and damage to, and the resulting suspension of operations at, the Chalk River Reactor.

38. Despite Lantheus's requests, Zurich has refused to perform its contractual obligation to indemnify Lantheus for its CBI losses. Zurich's refusal to pay for the CBI losses is a breach of its obligations under the Policy, for which Lantheus is entitled to money damages, including interest according to law.

39. As a direct and foreseeable result of Zurich's breach of the Policy, Lantheus has been deprived of the benefit of the insurance coverage for which it paid substantial premiums, and has been forced to incur and will continue to incur additional damages, including without limitation, the lost time value of money and other expenses, which damages are not subject to the Policy's applicable CBI sublimit.

## **PRAYER FOR RELIEF**

WHEREFORE, Lantheus prays for relief as follows:

1. With respect to Lantheus's First Claim for Relief, Plaintiff requests that the Court enter a judgment declaring:

   a) that the Contingent Business Income Loss sustained by Lantheus and Extra Expense and Expenses To Reduce Business Income Loss that Lantheus incurred as a result of the shutdown of the Chalk River Reactor are covered under the Policy; and

   b) that Zurich is obligated under the terms of the Policy to indemnify Lantheus for the full amount of its CBI losses, subject only to the applicable $70,000,000 sublimit.

2. With respect to Lantheus's Second Claim for Relief, Lantheus requests that the Court enter judgment for Lantheus in the full amount of its CBI losses, subject only to the applicable $70,000,000 sublimit, as well as interest required by law.

3. Lantheus further requests that the Court award Lantheus such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Lantheus Medical Imaging, Inc. hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

COVINGTON & BURLING LLP

By: _____
Andrew A. Ruffino

The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: 212-841-1000
Fax: 212-841-1010
aruffino@cov.com

William F. Greaney
Joanne B. Grossman
Rukesh A. Korde
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: 202-662-6000
Fax: 202-662-6291

Counsel to Plaintiff Lantheus Medical Imaging, Inc.

Dated: December 16, 2010