**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LANTHEUS MEDICAL IMAGING, INC., | |
| Plaintiff, | Case No. 10 Civ. 9371 |
| v. | ECF CASE |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LANTHEUS MEDICAL IMAGING INC.'S UNOPPOSED MOTION FOR ISSUANCE OF <u>LETTERS ROGATORY</u>**

Andrew A. Ruffino
COVINGTON & BURLING
The New York Times Building
620 Eighth Avenue
New York, N.Y. 10018-1405
Tel: 212.841.1097

William F. Greaney
Joanne B. Grossman
Rukesh A. Korde
Danielle M. Estrada
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: 202.662.6000

ATTORNEYS FOR LANTHEUS
MEDICAL IMAGING, INC.

May 10, 2011

## INTRODUCTION

Plaintiff Lantheus Medical Imaging, Inc. ("Lantheus") submits this memorandum of law in support of its motion for issuance of letters rogatory in order to permit the taking of discovery in Canada, for the purpose of: (1) compelling the deposition of a representative of Atomic Energy of Canada Limited ("AECL"); and (2) compelling AECL, at least twenty-one days prior to its deposition, to produce for inspection and copying by Lantheus the documents described in Schedule "A" attached to the proposed Letter Rogatory. As demonstrated below, the information sought is highly relevant to the factual disputes in this case and cannot be obtained by other means.

Counsel for Lantheus has conferred with counsel for defendant Zurich American Insurance Company ("Zurich"), and Zurich does not oppose this motion.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Plaintiff Lantheus filed this lawsuit against Zurich seeking declaratory relief and money damages arising from the breach of an insurance policy.

Lantheus is a specialty pharmaceutical company that manufactures and distributes diagnostic medical imaging products. Those products are used in nuclear medicine procedures and to facilitate myocardial perfusion imaging scans that detect coronary or cardiovascular disease. (Compl. ¶¶ 1, 8.) A critical ingredient in some of Lantheus' diagnostic products is a fission-produced isotope called Molybdenum-99 ("Moly-99"). (Compl. ¶ 2.) Technetium, a nuclear decay product of Moly-99, is used to activate another Lantheus product. (Compl. ¶ 8.) Lantheus' primary source of Moly-99 has for many years been AECL's nuclear reactor at Chalk River, Ontario. (Compl. ¶ 2.)

---

[1] The facts that form the basis for this Statement are contained in the Declaration of Danielle M. Estrada filed herewith.

On or about May 15, 2009, a release of radioactive heavy water was detected at the Chalk River Reactor, forcing its shutdown.  Operations at the Reactor remained suspended until August 2010.  (Compl. ¶ 3.)

As a result of the fifteen-month shutdown of the Chalk River Reactor and resultant disruption in the supplies of Moly-99, Lantheus suffered substantial business interruption losses.  Lantheus also incurred significant extra expenses attempting to obtain alternate supplies of Moly-99 in order to continue, as nearly as practicable, its pre-loss business operations.  (Compl. ¶¶ 3, 24, 25.)

The insurance policy at issue in this coverage dispute requires defendant Zurich to indemnify Lantheus for its business interruption losses and extra expenses resulting from the shutdown of the Chalk River Reactor.  (Compl. ¶¶ 1, 2.)  Specifically, the insurance policy covers, *inter alia*, contingent business interruption ("CBI") losses sustained by Lantheus that arise from the shutdown of "[c]ontingent [p]roperty" owned and operated by third parties from which Lantheus receives the delivery of materials or services.  (Compl. ¶¶ 2, 12.)

Zurich initially denied coverage for Lantheus' claim based upon a corrosion exclusion in its policy, contending that because the damage to the reactor arose from corrosion Lantheus' CBI losses were not covered.  (Joint Preliminary Pre-trial Mem. at 7 and Ex. 2 (Mar. 28, 2011)).  In its Answer to Lantheus' Complaint, Zurich asserts that numerous other related exclusions – that purport to limit coverage based upon the cause of the loss – preclude coverage for Lantheus' claim.  (Answer ¶¶ 45, 51, 59, 60, 64.)  Lantheus disputes the applicability of these exclusions to its losses.

3

One important factual dispute between the parties thus relates to cause of the shutdown of the Chalk River Reactor and the circumstances surrounding that shutdown. Information related to the so-called "root" cause of the shutdown and the circumstances surrounding the shutdown are thus highly relevant to the resolution of this lawsuit.

AECL is in possession of information directly related to the reasons for the shutdown and the surrounding circumstances. According to statements made during public hearings conducted by the Canadian government and regulatory authorities after the shutdown, AECL has conducted one or more investigations into the shutdown. (Estrada Decl. ¶ 4 (quoting Canadian Nuclear Safety Commission Public Hearing 10:13-23, 41:8-15 (July 5, 2010)); *see also id.,* Ex. A at AECL 00006.) These investigations included a technical review focused on the cause of the damage. (Estrada Decl. ¶¶ 4-5, 7).

AECL has produced a very limited selection of documents related to the Chalk River Reactor shutdown to defendant Zurich. Lantheus understands Zurich received these materials from AECL in response to an Access to Information request (the Canadian analog to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552). (Estrada Decl. ¶ 6.)

However, the AECL production to Zurich largely addresses management procedures for accountability and training purposes to prevent similar events in the future. (*E.g.*, Estrada Decl., Ex. A at AECL 00006-00007, AECL 00028-AECL00029, AECL 00089-00091.) AECL's limited production has been extensively redacted. (*E.g.*, *id.*, Ex. A at AECL 00044-00052, 00063-00067.) The redactions cover large portions of the text and appear to extend to photographs and/or diagrams. (*Id.*) The heavy water leak that led to the reactor shutdown is believed to have originated in the inadvertent introduction of water and air into a section of the reactor called the "J-ring annulus" or "J-Rod annulus." (Compl. ¶ 18.) The

4

section of the production related to "Inspections of the J-Rod Annulus" has been almost entirely redacted. (Estrada Decl., Ex. A at AECL 00047.) A section of one report titled "Causal Factors" has likewise been almost entirely redacted. (Estrada Decl., Ex. A at AECL 00050.)

The documents provided to date do not contain AECL's underlying technical data. (Estrada Decl. ¶ 7.) According to publicly available documents, AECL collected such technical data. (Estrada Decl. ¶ 4 (quoting Canadian Nuclear Safety Commission Public Hearing 10:13-23, 41:8-15 (July 5, 2010)).) Likewise, the documents provided do not contain any technical analyses although they do reveal that AECL did conduct at least one such analysis. (Estrada Decl. ¶ 7; *id.*, Ex. A at AECL 00006.) In addition, the unredacted portions of the documents refer to other reports and materials, including a third-party review of the reactor. (Estrada Decl. ¶ 7.) Those documents have not been produced. (*Id.*)

Moreover, the available AECL documents concerning the Chalk River Reactor shutdown contain statements from AECL that seek to shift responsibility for the shutdown away from operator negligence, which had been alleged to have contributed to the shutdown in public hearings before the Canadian Nuclear Safety Commission ("CNSC").[2] The available documents also appear to be inconsistent with oral statements of AECL personnel that water previously had leaked into the J-Rod annulus without incident and that chemical additives may have contributed to the damage to the reactor wall. (Estrada Decl. ¶ 8.) In

---

[2] *See* Estrada Decl. ¶ 5 (quoting Canadian Nuclear Safety Commission Public Meeting 23:9-17 (Jan. 20, 2011) (AECL executive described company efforts to improve human performance issues arising from "errors that people committed . . . during the performance of their duties" in response to CNSC question); Canadian Nuclear Safety Commission Public Hearing 28:13-16 (July 5, 2010) (AECL executive states that the company has taken action to "reduce air leaks and improve the delivery of $CO_2$" and will closely monitor "$CO_2$ purity" going forward)).

short, the documents that AECL has made available to date do not tell the whole story of what caused the Chalk River Reactor shutdown.

Lantheus has made repeated efforts to obtain the relevant information from AECL voluntarily.  Lantheus attempted to reach AECL Vice President, Commercial Richard Coté on several occasions by telephone, between May 2010 and December 2010; these calls were not returned.  (Estrada Decl. ¶ 9.)  Lantheus also requested documents and information by letter dated March 2, 2011; again it received no response.  (Estrada Decl. ¶ 9; *id.*, Ex. B.)

Lantheus submitted a request to AECL pursuant to Canada's Access to Information Act on April 11, 2011.  (Estrada Decl. ¶ 10; *id.*, Ex. C.)  On April 21, 2011, AECL advised Lantheus that AECL would provide Lantheus with the same materials that it had already provided to other requesters, presumably including Zurich.  (Estrada Decl. ¶ 10; *id.*, Ex. D at 1.)  AECL confirmed that it had withheld an unspecified number of other documents as exempt from production.  (Estrada Decl., Ex. D at 1.)  Based on subsequent discussions with AECL, "Lantheus understands that AECL does not intend to produce any documents in response to Lantheus' request beyond the limited materials it has already provided to other parties."  (Estrada Decl., Ex. E at 1.)  Moreover, "AECL has not committed to providing Lantheus with any additional documents beyond those already available and it has not committed to any definite time frame for producing such materials."  (*Id.*; *see also* Estrada Decl., Ex. D.)

Lantheus understands that it will take approximately two months to schedule a hearing in Canada on any letters rogatory issued by this Court.  It is therefore necessary to promptly obtain such letters so that Lantheus can complete discovery within the deadlines imposed by the Court.

**ARGUMENT**

This Court has the authority to issue letters rogatory pursuant to Rule 28(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781. *Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 CIV 7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005). "Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Id.* (citing *Elliot Assocs., L.P. v. Republic of Peru*, No. 96 CIV 7917 (RWS), 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997)). The legal standard for obtaining letters rogatory is "[n]o higher" than the standard for obtaining third-party discovery from a domestic entity using a subpoena. *Netherby*, 2005 WL 1214345, at * 1. Use of letters rogatory to obtain discovery in Canada is permitted. *Id.*

Lantheus seeks the production of documents and deposition testimony from AECL that is both "material" and "may lead to the discovery of material evidence." *Id.* One principal factual dispute between plaintiff and the defendant insurance company is the cause of the shutdown of the Chalk River Reactor. The information sought by Lantheus is material and necessary to establish the causes of and circumstances surrounding the heavy water leak that led to the Chalk River Reactor shutdown.

In particular, Lantheus seeks to obtain the complete results of any investigation or investigations conducted by AECL as to the cause of the Chalk River Reactor shutdown. More importantly, Lantheus seeks the underlying data and technical analyses so that its own expert(s) may formulate conclusions about the cause of the shutdown independent of AECL's assessment. The need for independent assessment is particularly acute because AECL's investigations appear to have been conducted for regulatory purposes rather than insurance purposes. As such, the documents produced to date focus on management issues and contain

7

limited discussions of the physical and chemical processes that led to the shutdown. As demonstrated above, there also are significant questions about the objectivity of AECL's investigation given its apparent attempts to shield itself from criticism by the CNSC and Canadian government. These questions likewise underscore Lantheus' need to conduct an independent analysis of the reasons for the shutdown.

    Based upon its investigation of publicly-available information, it appears that the release of heavy water that triggered the shutdown of the Chalk River Reactor occurred after nitric acid attacked the aluminum reactor vessel. The reactor vessel contains heavy water and the uranium fuel rods that generate the nuclear reaction. It is surrounded by a void space called the J-Rod annulus. The publicly available materials suggest that water and air were inadvertently introduced into the annulus following the apparent failure of equipment designed to pump a steady volume of carbon dioxide gas into the annulus and of the water drainage system of the annulus. The accidental introduction of water and air into the annulus, and the displacement of carbon dioxide, apparently led to the formation of nitric acid that rapidly penetrated the aluminum wall of the reactor vessel from the outside in. The pattern of damage to the reactor wall (localized damage in a limited horizontal region) also indicates that the nitric acid attack on the reactor wall took place over a short period of time, and was not the result of wear and tear, corrosion or any other natural and gradually occurring process associated with the aging of equipment as it reaches the end of its useful life. Data collected by AECL showing the presence of nitric acid in the annulus, the thickness of the reactor vessel in various areas, the flow rate of carbon dioxide into the annulus at the time of the shutdown, and similar information would establish Lantheus' theory of the case. Such information is relevant, would be discoverable by a simple subpoena if AECL were subject to

process within the United States, and is therefore subject to discovery by letters rogatory. *Netherby*, 2005 WL 1214345, at *1 ("No higher standard is required for issuing letters rogatory that seek the cooperation of the Canadian courts" than would be required for issuance of subpoena).

Moreover, the information provided to date by AECL is scant and what few documents have been provided are redacted to the point of being effectively useless. Despite the fact that AECL's investigation concerns the leak of radioactive heavy water from a nuclear reactor using highly enriched uranium as a fuel source, AECL has only produced 94 pages of information, a number of which state that pages have been withheld and include no substantive information. AECL admits that it has additional information that it is withholding. (*See* Estrada Decl., Ex. D at 1; Estrada Decl., Ex. E at 1.) Key sections of the production have been redacted. One document that expressly deals with inspections of the area of the reactor where the causal process in question originated – the J-Rod annulus – has been completely redacted. Sections of reports that expressly deal with the causes of the damage to the reactor have likewise been completely redacted. No underlying data or analyses have been provided at all. Reports dealing with the technical reasons for the shutdown have been withheld. At least one third-party report has been withheld.

Lantheus has no other means to obtain this discovery. Lantheus has repeatedly attempted to obtain voluntary compliance with its information requests. AECL has not responded to Lantheus' phone calls and informal letter. Despite a formal Access to Information Request, AECL has indicated that it would not make a timely production, "has not committed to providing any additional documents beyond those already available", and "has not committed to any definite time frame." (Estrada Decl., Exs. D, E.)

9

The sequence of events leading to the heavy water release, and the damage to and shutdown of the Chalk River Reactor, has not been established, has not been the subject of discovery, and is disputed by the parties. (*Compare* Compl. ¶¶ 18-21 *with* Answer ¶¶ 18-21.) Because the Chalk River Reactor is operated by AECL and is outside of Lantheus' control, the cause or causes of the shutdown cannot be established without discovery from AECL of what transpired at the Reactor. While AECL has made certain statements and has released heavily redacted documents regarding the events leading up to the shutdown of the Chalk River Reactor and the scope of the repair work, it has not released the testing data and the analytical and engineering documents from its technical investigation of the shutdown. This information is necessary to determine the causes of the Chalk River Reactor shutdown and the relevant sequence of events that led to the loss because these facts go to the insurance coverage issues in this case, including whether the physical loss or damage to the Chalk River Reactor resulted from a "covered cause of loss", and why the Policy exclusions invoked by Zurich, such as the corrosion exclusion, do not apply. In addition, the incomplete statements in AECL's publicly disclosed documents contradict allegations by the regulatory body that oversees AECL and statements made by AECL, and they appear to be self-serving. For all of these reasons, discovery from AECL is needed so this case can be resolved on the merits.

## CONCLUSION

AECL is not available for deposition in this country, and thus the issuance of letters rogatory is necessary to secure the authority to depose AECL in Canada and to compel it to produce the requested documents and other papers. For the foregoing reasons and the entire record in this matter, Lantheus therefore requests that its Unopposed Motion to Issue Letters Rogatory permitting it to seek discovery from AECL in Canada be granted.

DATED:  May 10, 2011　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　  s/Danielle M. Estrada
　　　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　　　Andrew A. Ruffino
　　　　　　　　　　　　　　　　　　　　　　The New York Times Building
　　　　　　　　　　　　　　　　　　　　　　620 Eighth Avenue
　　　　　　　　　　　　　　　　　　　　　　New York, N.Y. 10018-1405
　　　　　　　　　　　　　　　　　　　　　　Tel: 212.841.1097

　　　　　　　　　　　　　　　　　　　　　　William F. Greaney
　　　　　　　　　　　　　　　　　　　　　　Joanne B. Grossman
　　　　　　　　　　　　　　　　　　　　　　Rukesh A. Korde
　　　　　　　　　　　　　　　　　　　　　　Danielle M. Estrada
　　　　　　　　　　　　　　　　　　　　　　1201 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20004-2401
　　　　　　　　　　　　　　　　　　　　　　Tel: 202.662.6000

　　　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR PLAINTIFF
　　　　　　　　　　　　　　　　　　　　　　LANTHEUS MEDICAL IMAGING, INC.