UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LANTHEUS MEDICAL IMAGING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 10 Civ. 9371 <br><br> ECF CASE |

## DECLARATION OF DANIELLE M. ESTRADA

Danielle M. Estrada hereby declares as follows:

1. I am an attorney admitted to practice in the District of Columbia, and have been admitted pro hac vice to the United States District Court for the Southern District of New York for purposes of the above-captioned case. I am associated with the law firm of Covington & Burling of Washington, D.C. My firm represents Lantheus Medical Imaging, Inc. ("Lantheus") in the above-captioned matter.

2. I am familiar with the matters set forth herein based on my review of the documents and make this declaration on information and belief in support of Lantheus' Motion for Issuance of Letters Rogatory in the above-captioned matter.

3. Counsel for Lantheus has conferred with counsel for Zurich American Insurance Company ("Zurich") regarding this motion by telephone on May 6, 2011. Zurich does not oppose Lantheus' Motion for Issuance of Letters Rogatory.

4. During public hearings on the Chalk River Reactor shutdown held by the regulatory body that oversees AECL, the Canadian Nuclear Safety Commission

("CNSC"), AECL said that it conducted "a visual inspection of the full circumference of the NRU vessel. . . . followed by a comprehensive non-destructive or NDE campaign undertaken over five months to determine the thickness of the vessel wall. Progressively more sophisticated probes and delivery systems were used to expand the area of inspection and the quality of data." (CNSC Public Hearing 10:13-23 (July 5, 2010), *available at* http://nuclearsafety.gc.ca/eng/commission/pdf/2010-07-05-Transcript-HearingAECL-NRU.pdf). At the same hearing, the CNSC said that "CNSC staff required AECL to . . . conduct a root cause investigation into the leak . . . [which] was divided into two parts: a technical investigation . . . and a wider organizational investigation." (*Id.* at 41:8-15). The CNSC also stated that "AECL was required to perform an extensive assessment of the vessel to determine its complete condition, define a repair strategy and a detailed repair plan based on the condition assessment and the technical root cause, implement a mitigation strategy . . ., demonstrate that acceptable repair had been done . . ., and finally to produce a fitness-for-service safety case for the vessel...." (*Id.* at 41:18-42:3).

      5.     During the same public hearing, an AECL executive stated that the company has taken action to "reduce air leaks and improve the delivery of $CO_2$" and will closely monitor "$CO_2$ purity" going forward. (Canadian Nuclear Safety Commission Public Hearing 28:13-16 (July 5, 2010), *available at* http://nuclearsafety.gc.ca/eng/commission/pdf/2010-07-05-Transcript-HearingAECL-NRU.pdf). In subsequent public testimony, an AECL executive described company efforts to improve human performance issues arising from "errors that people committed . . . during the performance of their duties" in response to CNSC question. (Canadian Nuclear Safety Commission Public Meeting 23:9-

17 (Jan. 20, 2011), *available at* http://nuclearsafety.gc.ca/fr/commission/pdf/2011-01-20-Transcript-Meeting.pdf.)

6. Zurich provided Lantheus with a production of 94 pages of material, which Lantheus understands was received from AECL in response to an Access to Information request (the Canadian analog to the Freedom of Information Act, 5 U.S.C. § 552). True and correct excerpts of the AECL Production are attached as Exhibit A hereto.

7. A review of the AECL production of documents shows that the unredacted portions do not contain AECL's underlying technical data or analyses. In addition, the unredacted portions of the documents refer to other reports and materials, including a third party review of the reactor by "independent experts", which are not included in the production. (*Id.* at AECL 00083.)

8. On information and belief, AECL personnel have made statements to the effect that water previously had entered the annulus without incident and that unspecified chemical additives may have contributed to the damage to the reactor wall.

9. Lantheus has made repeated efforts to obtain relevant information regarding the reactor shutdown from AECL voluntarily. Lantheus attempted to reach AECL Vice President, Commercial Richard Coté on several occasions by telephone, between May 2010 and December 2010; these calls were not returned. Lantheus also requested documents and information by letter dated March 2, 2011; it received no response to that letter. A true and correct copy of the letter is attached as Exhibit B hereto.

10. On April 11, 2011, Lantheus submitted a request to AECL pursuant to Canada's Access to Information Act. A true and correct copy of the Request is attached as Exhibit C hereto. On April 21, 2011, AECL's Access Coordinator Jean Boulais contacted

Lantheus' Canadian counsel Brett Harrison concerning its access request. Lantheus memorialized that discussion and responded to it in a letter dated May 4, 2011. A true and correct copy of Lantheus' May 4 letter to AECL is attached as Exhibit D hereto.

11. On May 6, 2011, AECL's Access Coordinator Jean Boulais again contacted Lantheus' Canadian counsel Brett Harrison concerning its access request. Lantheus memorialized that discussion and responded to it in a letter dated May 9, 2011. A true and correct copy of Lantheus' May 9 letter to AECL is attached as Exhibit E hereto.

12. The discovery sought from AECL has not previously been the subject of discovery in this case.

13. Upon information and belief, most, if not all, of the evidence sought exists solely in the institutional knowledge of AECL and therefore is not available through discovery of individuals within the jurisdiction of the United States District Court for the Southern District of New York.

14. AECL is not available for deposition in this country, and the issuance of letters rogatory is necessary to secure the power to depose AECL in Canada and to compel it to produce the requested documents and other papers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2011

_Danielle M. Estrada_
Danielle M. Estrada

4