

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LANTHEUS MEDICAL IMAGING, INC.,

                       Plaintiff,

    v.

ZURICH AMERICAN INSURANCE
COMPANY,

                       Defendant.

---

Case No. 10 Civ. 9371 (LTS) (MHD)

ECF CASE

## REQUEST TO TAKE EVIDENCE ABROAD OF ATOMIC ENERGY OF CANADA LIMITED (LETTERS ROGATORY)

FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK TO THE COURT OF ONTARIO, CANADA:

WHEREAS a proceeding is pending before this Court at New York, New York, between Lantheus Medical Imaging, Inc. ("Lantheus") and Zurich American Insurance Company.

AND WHEREAS it has been shown to this Court that the testimony of representatives of Atomic Energy of Canada Limited ("AECL") of the Province of Ontario is necessary for use at the trial of this proceeding and without the testimony of said person or persons justice cannot be completely done between the parties.

AND WHEREAS it has been shown to us that the plaintiff Lantheus is unable to obtain the required information from other persons whom Lantheus is entitled to examine or from the witnesses Lantheus seeks to examine.

AND WHEREAS it has been shown to us that the evidence sought to be obtained cannot be obtained by Lantheus by any other method and there is a substantial likelihood that the desired evidence will be obtained in the manner proposed.

WE THEREFORE REQUEST that in furtherance of justice you cause AECL to appear, at such time and place as you shall appoint, before any such person who, according to the laws of Ontario, is competent to preside over the examination of witnesses, to answer questions under oath or affirmation by an attorney for Lantheus, and to allow for the testimony of AECL to be reduced to writing. It is the understanding of this Court that the granting of assistance of the type herein requested is authorized by the Canada Evidence Act, R.S.C. 1985, chapter C-5, and the Ontario Evidence Act, R.S.O. 1990, chapter E-23. The courts of the United States are authorized by statute to extend similar assistance to the tribunals of Canada.

IT IS FURTHER REQUESTED that you cause AECL to produce to Brett Harrison, an attorney at the law firm of McMillan LLP, and located at Brookfield Place, Suite 4400, 181 Bay Street, Toronto, Ontario, Canada M5J 2T3, no less than twenty-one days in advance of such examination the documents described in Schedule "A" hereto.

IT IS FURTHER REQUESTED that you cause the examination of AECL to be reduced to writing and conducted in accordance with all applicable laws of evidence and procedure.

2

THE UNITED STATES DISTRICT COURT for the Southern District of New

York extends to the judicial authorities of Ontario the assurances of its highest consideration.

Dated: May **℔**, 2011

_____

The Honorable Laura Taylor Swain
United States District Court Judge
Southern District of New York

## SCHEDULE A

The term "documents" as used below includes reports, memoranda, data or analysis of data.

  1.  The documents that AECL relied upon in reaching the conclusions identified below in its presentations (and any associated written testimony or reports) to the Canadian Nuclear Safety Commission ("CNSC") of January 20, 2011 and July 5, 2010:

    (a)  <u>January 20, 2011 presentation:</u>  conclusions regarding (i) root causes of the NRU reactor vessel leak in or near the area of the J-Ring or J-Rod Annulus ("Annulus"), (ii) maintenance of the carbon dioxide concentration and improvements to the carbon dioxide distribution system in the Annulus, (iii) operational performance issues that contributed to or caused the leak, (iv) the operation, breakdown or failure of the water drainage system in the Annulus, and (v) defective fuel issues.

    (b)  <u>July 5, 2010 presentation:</u>  conclusions regarding (i) causes of the heavy water leak in the NRU reactor, including localized cavities or pits discovered at the J-41 and J-13 to 18 areas of the Annulus, (ii) damage and other effects of the heavy water leak in the NRU reactor, including emissions of tritium above weekly action levels from May until July 2009, and (iii) the meaning of the statement on page 66 of the hearing transcript that "corrosion ha[d] been progressing" at the time of the license renewal in 2007.

  2.  The documents that AECL relied upon in reaching conclusions regarding the cause of the leak in the NRU reactor, the damage mechanism or the condition assessment of the NRU reactor, including data, laboratory reports, research studies, and any simulation tests or research, as those conclusions are set forth in the following presentations (and any associated written testimony or reports):

    (a)  the presentation to the House of Commons Standing Committee on Natural Resources meeting on October 19, 2009;

(b)  the presentation to the CNSC on August 27, 2009;

(c)  the presentation to the House of Commons Standing Committee on Natural Resources on August 21, 2009;

(d)  the presentation to the CNSC on July 8, 2009;

(e)  the presentation to the CNSC on June 11, 2009; and

(f)  the presentation to the House of Commons Standing Committee on Natural Resources on June 4, 2009.

3.  The documents which AECL considered or reviewed in evaluating whether or not radiation caused or contributed to an alteration of the micro-structure of the aluminum alloy composing the NRU reactor vessel, and whether any such alteration caused or contributed to the May 2009 shutdown of the NRU reactor.

4.  The documents which AECL considered or reviewed in evaluating the cause or causes of the nitric acid formation in the Annulus of the NRU reactor.

5.  The documents which AECL considered or reviewed in evaluating the nitric acid concentration in the Annulus of the NRU reactor at the time of or during the period prior to the May 15, 2009 NRU reactor shutdown.

6.  The documents which AECL considered or reviewed in evaluating carbon dioxide flow rates in the Annulus, variations of such flow rates over time, air leakage into the Annulus, and any breakdown or failure of any carbon dioxide pumping system in the NRU reactor, during the period prior to the May 15, 2009 NRU reactor shutdown.

7.  The documents which AECL considered or reviewed in designing or implementing a more effective carbon dioxide distribution system in the Annulus and methods for preventing air leaks into the Annulus after May 2009.

2

8. The documents which AECL considered or reviewed in evaluating whether or not inadequate water drainage in the Annulus of the NRU reactor during the period prior to the May 15, 2009 NRU reactor shutdown caused or contributed to that shutdown and in evaluating any breakdown or failure of any water drainage system in the Annulus.

9. Documents reporting on the results of inspections and scans of the NRU reactor vessel conducted in 2004, 2005, 2009, 2010 and 2011.

10. The results of any coupon tests (that is, tests regarding, collecting or assessing damage, in or around the J-Ring Annulus and reactor vessel) conducted following the May 15, 2009 NRU reactor shutdown.

11. Documents graphically or numerically depicting the specific locations of the damage to the NRU reactor vessel (including "pitting," leak holes, "dish shaped" irregularities, and thinning of the reactor vessel wall) at the time of the shutdown.

12. Documents describing damage to the NRU reactor that could be or were caused by the events that led to the May 15, 2009 NRU reactor shutdown.

13. The documents which AECL considered or reviewed in evaluating whether or not defective fuel had any role in causing or contributing to the May 2009 shutdown of the NRU reactor.

14. The documents which AECL considered or reviewed in evaluating whether or not any chemicals, dessicants, or "impurities" were introduced into or found in the Annulus or in water in the Annulus space at the time of or during the period prior to the May 2009 NRU reactor shutdown.

15. The manuals, guidelines or written procedures, or the portions of such manuals, guidelines or written procedures, applicable to the maintenance and inspection of the

3

NRU carbon dioxide flushing system or systems, the NRU annulus water drainage system or systems, or the NRU seal maintenance system or systems (to prevent air leaks into the annulus) in force in May 2009.

16. Documents sufficient to identify any litigation, mediation, arbitration, settlement, or other legal disputes or claims in which AECL is involved arising out of the May 2009 shutdown of the NRU reactor.

17. Documents sufficient to identify any claim for insurance coverage made by AECL as a result of the May 2009 reactor shutdown, including the resolution of any such claim.

18. Documents sufficient to identify the persons or entities involved in maintenance of the NRU reactor, including any third party companies or consultants, prior to the May 2009 shutdown of the NRU reactor.

19. Documents sufficient to identify the two experts who reviewed AECL's interim "corrosion" assessment and any reports or other documents reflecting the experts' opinions or conclusions regarding the interim "corrosion" assessment.

20. Photographs, drawings, or other images depicting the damage to the NRU reactor vessel (including "pitting" or leak holes) at or around the time of the shutdown.

21. Reports analyzing or addressing the cause(s) and effects of the May 2009 shutdown authored, in whole or in part by any of the following persons: I. Muir, T.A. Moir, C. Bromley, G. Arsenault, K. Sedman, L. Lupton, G. Mark and C.W. Turner.

22. Any metallurgical or chemical analysis of the wall of the reactor vessel or the Annulus performed following the May 15, 2009 reactor shutdown.

23. The documents AECL considered or reviewed in evaluating whether there was any damage to the NRU reactor prior to the May 15, 2009 reactor shutdown other than the

4

damage described in the presentations identified in Requests Nos. 1 and 2 above or other than

any damage not otherwise publicly disclosed.