**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LANTHEUS MEDICAL IMAGING, INC., <br><br>                 Plaintiff, <br><br>    v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br>                Defendant. | Case No. 10 Civ. 9371 (LTS) (MHD) <br><br> ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LANTHEUS MEDICAL IMAGING INC.'S MOTION FOR ISSUANCE OF**
**AMENDED LETTERS ROGATORY**

Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, N.Y. 10018-1405
Tel: 212.841.1097

William F. Greaney
Joanne B. Grossman
Rukesh A. Korde
Danielle M. Estrada
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
Tel: 202.662.6000

ATTORNEYS FOR LANTHEUS
MEDICAL IMAGING, INC.

August 29, 2011

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTS AND PROCEDURAL BACKGROUND ........................................................... 2

    A.    The Insurance Coverage Dispute Between Lantheus and Zurich .......................... 2

    B.    AECL's Critically Relevant Documents .................................................. 3

    C.    Lantheus's Attempts to Obtain Voluntary Production ........................................ 4

    D.    The Canadian Proceedings ......................................................... 6

ARGUMENT ................................................................................................................. 7

I.    THE FSIA HAS NO BEARING ON THE ISSUANCE OF LETTERS
    ROGATORY. ............................................................................................. 8

    A.    Because Letters Rogatory Do Not Implicate the Coercive Jurisdiction of
        This Court, the FSIA Has No Bearing. .................................................. 8

    B.    U.S. and Canadian Courts Routinely Issue Letters Rogatory to Foreign
        Sovereigns. ..................................................................... 11

    C.    AECL's Status as a Crown Corporation Is Irrelevant to the Issuance of the
        Amended Letters Rogatory and Was Known to this Court. ................................ 13

II.    JURISDICTIONAL DISCOVERY WOULD BE NECESSARY TO EVALUATE
    WHETHER AECL'S COMMERCIAL ACTIVITY DEPRIVES IT OF ANY
    PURPORTED IMMUNITY. .......................................................... 15

III.    AECL'S ARGUMENTS ABOUT CANADIAN LAW ARE IRRELEVANT AND
    WRONG. ...................................................................... 17

CONCLUSION .............................................................................................................. 19

**INTRODUCTION**

Plaintiff Lantheus Medical Imaging, Inc. ("Lantheus") seeks the issuance of Amended Letters Rogatory requesting the assistance of the Canadian courts in obtaining evidence from Atomic Energy of Canada Limited ("AECL") that is crucial to the resolution of this case.  AECL is a "crown corporation" wholly-owned by the Canadian federal government.  This Court previously issued letters rogatory to the Ontario Superior Court of Justice ("the Ontario Court") seeking assistance in obtaining evidence from AECL.  The Ontario Court declined to enforce those letters rogatory as drafted based on the misguided argument by AECL that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611 (2010), may restrict the Court's ability to issue letters rogatory with respect to a crown corporation.

AECL's assertion rests on a fundamental misunderstanding of the FSIA and the nature of letters rogatory.  The FSIA is a jurisdictional statute which limits the authority of U.S. courts to *exercise jurisdiction* over foreign governments and their instrumentalities.  Letters rogatory, in contrast, are comity-based requests by a U.S. court for *assistance* from foreign courts in obtaining documents and testimony from a non-party located in another country.  Because this Court has not been asked to exercise coercive jurisdiction over AECL, but is merely being asked to request the assistance of the Canadian courts—which indisputably *do* have jurisdiction over AECL—in obtaining critical documents and information in the exclusive possession of AECL, the FSIA has no bearing on the ability of this Court to issue letters rogatory.  The Court should therefore issue the Proposed Amended Letters Rogatory sought here.

In evaluating this motion, it is worth noting that although AECL is a crown corporation, it is regularly sued and provides discovery in the courts of Canada.  It also has

1

been the subject of prior letters rogatory issued by U.S. courts and enforced in Canada. Besides being legally erroneous, AECL's claims of immunity are belied by the real world facts.

Counsel for Lantheus has conferred with counsel for defendant Zurich American Insurance Company ("Zurich"), and Zurich does not oppose this motion. (Declaration of Rukesh A. Korde, August 29, 2011 ("Korde Decl.") ¶ 3.)

## FACTS AND PROCEDURAL BACKGROUND

### A.     The Insurance Coverage Dispute Between Lantheus and Zurich

Lantheus brought this civil action for declaratory relief and money damages against Zurich arising out of Zurich's breach of an insurance policy ("the Policy"). Lantheus and Zurich dispute the scope of the Policy's coverage for the contingent business interruption losses that Lantheus sustained as a result of physical damage to a nuclear reactor ("the NRU Reactor") owned and operated by AECL. The NRU Reactor provides Lantheus with a critical raw ingredient, molybdenum-99, which is an isotope used to manufacture various Lantheus radiopharmaceutical products.[1] The NRU Reactor shut down for 15 months in 2009 and 2010. As a result, Lantheus lost substantial revenue and incurred substantial extra expenses attempting to obtain alternate supplies of molybdenum-99 in order to continue as nearly as practicable its pre-loss business operations.

Lantheus asserts that its losses arose from physical damage to the NRU Reactor resulting from a "covered cause of loss" under the Policy. (Compl. ¶ 11.) Lantheus seeks discovery from AECL to show that the exclusions in the Policy relied on by Zurich to deny coverage do not apply. Resolution of these factual disputes, which will be central to any

---

[1] Lantheus uses molybdenum-99 to manufacture diagnostic medical imaging products, which are used in scans that detect, among other things, coronary disease.

trial of this case, requires detailed evidence about the sequence of events leading to the NRU

Reactor shutdown and the causes of the damage to its aluminum alloy reactor vessel.

### B.     AECL's Critically Relevant Documents

Lantheus's Amended Letters Rogatory seek assistance in obtaining five narrow

categories of documents:

- (1) documents regarding the causes of the damage to the NRU Reactor and the sequence of events leading to the damage (*see* Proposed Amended Letters Rogatory, Schedule A (Revised), Nos. 7-10, 12-13);

- (2) documents evaluating the metallurgical condition of the aluminum alloy comprising the reactor vessel (*id.* Nos. 1, 14);

- (3) documents regarding the alleged formation of nitric acid in the reactor at the time of or prior to the shutdown (*id* Nos. 2, 3);

- (4) documents evaluating the functioning of systems designed to keep water and air away from the reactor vessel at the time of or prior to the shutdown (*id.* Nos. 4-7); and

- (5) documents concerning whether any chemicals, desiccants or impurities were found in or around the area of the vessel that was damaged (*id.* Nos. 7, 11).

Lantheus is seeking technical and analytical documents about the chemical

attack on the aluminum alloy of the reactor vessel and documents that may show the

involvement of desiccants or impurities in the damage mechanism.  Lantheus is *not* seeking

information about the amounts or locations of uranium used to fuel the NRU Reactor or any

other information that might implicate Canadian national security.  Moreover, a review of the

limited materials produced by AECL to date in response to Lantheus's Access-to-Information

Request shows that the vast majority of information that AECL has withheld has been

redacted to protect *AECL's* financial and intellectual property interests, not *Canada's* national

security.  (Harrison Decl. ¶ 10.)

The documents sought by Lantheus relate to central factual issues in the coverage litigation: whether the damage resulted from a covered external cause (such as operator error or another fortuitous event), whether the damage resulted from "corrosion" as contended by Zurich, and whether the NRU Reactor was improperly maintained.  (*See also* Korde Decl. ¶¶ 11-16 (explaining the relevance of the documents sought to Zurich's various defenses).)  AECL has numerous responsive documents, almost none of which have been produced to Lantheus in unredacted form.  (*Id.* ¶¶ 10, 17-30.)

**C.    Lantheus's Attempts to Obtain Voluntary Production**

Prior to seeking the initial letters rogatory, Lantheus engaged in a year-long effort to obtain evidence voluntarily from AECL.

- More than a year ago, on May 27, 2010, representatives of Lantheus met with Richard Coté, Vice President, Isotopes Business for AECL, to discuss the shutdown of the NRU Reactor.  (Declaration of Anna St. John, August 29, 2011 ("St. John Decl.") ¶ 3.)  At that meeting, Mr. Coté provided some useful second-hand information to Lantheus (*id.* ¶¶ 3-5), and indicated that he was willing to set up a follow-up call or meeting to provide additional information, but that he wanted to check with AECL management first (*id.* ¶ 6).

- Nevertheless, when counsel for Lantheus called Mr. Coté to arrange a meeting with AECL technical personnel, they were told that Mr. Coté was "busy" or "tied up in a meeting" or "on another line" and that he "will call you back."  Neither Mr. Coté nor anyone else at AECL returned these calls.  (*Id.* ¶ 7.)

- Lantheus attempted to contact AECL directly to arrange a meeting between Lantheus's counsel and AECL technical personnel.  Despite repeated efforts, and assurances from AECL that it would set up the meeting, Lantheus was unable to obtain the meeting.  (*Id.* ¶ 8.)

- Lantheus's Canadian counsel, by letter of March 2, 2011, wrote to AECL's General Counsel requesting the information.  AECL did not respond to that letter, which specifically advised AECL that Lantheus was requesting

"voluntary production of these documents in the hope of avoiding the use of formal process."  (Korde Decl. Ex. 4 at 2.)

- Lantheus's General Counsel and its outside U.S. counsel attempted to reach AECL's General Counsel by phone on April 5, 2011.  That call was not returned.  (Korde Decl. ¶ 19.)

Lantheus also attempted to obtain information from AECL by way of a request under Canada's *Access to Information Act*, R.S.C., 1985, c. A-1, Canada's analog to the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552 (2011).  Lantheus's request to AECL under the *Access to Information Act* was submitted on April 11, 2011 (the "ATI Request").  (Korde Decl. Ex. 5.)  Despite several phone calls with, and several letters to, AECL, it has to date resisted producing any substantive information in response to the ATI Request.[2]  (Korde Decl. ¶¶ 21-30.)

As a result, Lantheus again advised AECL that Lantheus would be "seeking approval by the U.S. court of a letter of request to the Canadian courts to require production of all the requested materials."  (Korde Decl. ¶ 21, Ex. 6 at 2.)  At no point during these exchanges did AECL suggest that the FSIA would bar letters rogatory.  (Korde Decl. ¶¶ 17-30.)  Indeed, AECL is regularly sued in Canadian courts and is subject to discovery through the processes of those courts on a routine basis.  (Declaration of Brett Harrison, August 29, 2011 ("Harrison Decl.") ¶ 16; *id.* Ex. 3, at 62:6-14 (testifying that AECL has collected and produced over 300,000 documents in prior litigation).)

---

[2] While AECL did produce approximately 2,200 pages of materials on May 26, 2011, approximately 80% of those documents dealt with unrelated issues, *not* the 2009 NRU Reactor shutdown.  Those documents appeared to be copies of materials that AECL had produced in response to other, unrelated ATI requests from other, unrelated parties.  (Korde Decl. ¶ 25.)  The few documents that dealt with the 2009 NRU Reactor shutdown were extensively redacted, and provided little substantive information.  (*E.g.*, Korde Decl. Ex. 9.)  AECL then unilaterally extended the time period for any further response by 90 days, and has refused to provide any assurances that any future response would contain unredacted responsive documents.  (Korde Decl. ¶¶ 27, 29, Ex. 11.)

**D.     The Canadian Proceedings**

On May 26, 2011, shortly after Judge Swain endorsed the initial Letters Rogatory, Lantheus filed an application with the Ontario Court seeking to obtain the requested discovery from AECL ("Lantheus's Application").  (Korde Decl. ¶ 32.)  Lantheus then made significant further efforts to reach a negotiated resolution of the situation.  (*Id.* ¶¶ 33-43.)

On June 16, 2011, more than a year after Lantheus had sought AECL's cooperation in making evidence available, AECL for the first time asserted that U.S. law somehow prohibited the issuance of Letters Rogatory as to AECL.  (*Id.* ¶ 36.)  But when Lantheus asked AECL to explain the specifics of its legal position, AECL refused to do so, stating that it would not "'negotiate' its disclosure obligations and exemptions."  (*Id.* ¶ 39.)  AECL also demanded that Lantheus and Zurich release AECL from any claims that they might have against AECL resulting from the NRU Reactor shutdown.  (*Id.* ¶¶ 47-50.)  Lantheus could not provide such a release without endangering its coverage claim against Zurich.  (*Id.* Ex. 24 at 2.)

While Lantheus did not agree to a release, it did make several other significant accommodations.  (*Id.* ¶ 49, Ex. 24.)  These accommodations are reflected in Schedule A (Revised) to the Proposed Amended Letters Rogatory submitted with this motion.  Despite these efforts, AECL continued to oppose Lantheus's request to enforce the Letters Rogatory.  (*Id.* ¶ 50.)

On July 27, 2011, the Ontario Court orally dismissed without prejudice Lantheus's Application for enforcement of the initial Letters Rogatory.  (*Id.* Ex. 26 at 10-11.)  At AECL's urging, the Ontario Court interpreted the Canadian statutory requirement that letters rogatory be issued by a "court of competent jurisdiction" to mean that this Court may

6

not have been competent to issue the Letters Rogatory if doing so would violate the FSIA. The Ontario Court concluded "[t]here is nothing in [the U.S. Court's] order which indicates that the court was aware of or that it considered the question of whether it had jurisdiction to make the order that it did by reason of the provisions of the FSIA."  (*Id.* at 5.)  The Ontario Court thus ruled that "in deference to the U.S. Court that was not given the opportunity to consider the issue, it is improper for this court to grant this request before the U.S. Court has been given the relevant information" that AECL is a crown corporation.  (*Id.* at 10.)

The Ontario Court found that both AECL's U.S. law expert and Lantheus's U.S. law expert "agree that a consideration of whether the FSIA, if no exception were to apply, would lead the U.S. Court to conclude that it had no jurisdiction to issue a subpoena against AECL if AECL had been in the jurisdiction" was a relevant consideration.  (*Id.* at 9.) That is incorrect, as demonstrated below, *see infra* p. 13.  The Ontario Court was also convinced that this Court would not have issued the letters rogatory if Lantheus had put a spotlight on the relationship between AECL and the Canadian federal government, stating that "it is obvious that the U.S. Court did not have relevant information before it."  (*Id.* at 9-10.) Based on these considerations, Lantheus's Application to enforce the initial letters rogatory was dismissed without prejudice.  The Ontario Court ruled that Lantheus could file a renewed application "which demonstrates that the U.S. Court had the opportunity to consider the issue of the applicability of the FSIA."  (*Id.* at 11.)

## ARGUMENT

The only issue the Canadian court asked this Court to consider is whether the FSIA bars issuance of the Amended Letters Rogatory.  The answer is no.  The FSIA does not prevent a federal district court from issuing letters rogatory seeking discovery from a foreign sovereign through the processes and procedures of a foreign court.  The Court accordingly

7

should grant this application.  Alternatively, if the Court for some reason were to find that the FSIA is implicated here, jurisdictional discovery from AECL would be needed to determine whether its commercial activities remove it from the FSIA's protection.

I.      **THE FSIA HAS NO BEARING ON THE ISSUANCE OF LETTERS ROGATORY.**

The issuance of letters rogatory as to an entity owned by a foreign sovereign does not implicate the FSIA.  Ultimately, the issue is not whether the FSIA applies or whether Lantheus is seeking to obtain indirectly what it could not obtain directly.  Rather the issue is whether an American litigant is entitled to the same non-party discovery that a litigant in a Canadian action could obtain under the supervision and authority of the Canadian courts. This is precisely why letters rogatory exist.

A.      **Because Letters Rogatory Do Not Implicate the Coercive Jurisdiction of This Court, the FSIA Has No Bearing.**

Courts do not consider the FSIA in deciding whether to issue letters rogatory to foreign sovereigns for good reason.  The FSIA places certain limits on the jurisdiction of U.S. courts over foreign sovereigns and their agents and instrumentalities.  In contrast, letters rogatory are used when a court *lacks* jurisdiction over a foreign entity from which evidence is sought.  The two do not intersect.

A letter rogatory is "a formal request from a court in which an action is pending, to a foreign court" to, among other things, secure "the taking of evidence."  22 C.F.R. § 92.54 (2010).  Such requests for assistance via letters rogatory are based on principles of reciprocity and international comity.  *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (noting the enforcement of letters rogatory in the United States is based upon "the twin aims" of comity, "providing efficient means of assistance to participants in international litigation," and

reciprocity, "encouraging foreign countries . . . to provide similar means of assistance to our courts" (quotations and citations omitted)); *DBMS Consultants Ltd. v. Computer Associates Intern., Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990) (letters rogatory are requests for "cooperation" from the recipient foreign court, "entirely within the latter's control" and are "usually granted, by reason of the comity existing between nations in ordinary peaceful times"). Letters rogatory are used "to obtain discovery from a source of information beyond the jurisdiction of the United States court" and they require "the assistance of a foreign judicial system to obtain this information." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 105 F.R.D. 435, 445 (S.D.N.Y. 1984) (citations omitted). Letters rogatory are *unnecessary* "when the discovery [is] sought from another litigant since the jurisdiction of the United States court ensured that the litigant could be compelled to produce the information or suffer sanctions under the federal rules." *Id.* (citations omitted); *Am. Special Risk Ins. Co. v. Delta Am. Re Ins. Co.*, 634 F. Supp. 112, 117 (S.D.N.Y. 1986) (discovery of witnesses "who are beyond the court's subpoena power may be provided by depositions taken pursuant to letters rogatory").[3]

It is equally well-established that the FSIA limits the ability of U.S. courts to exercise coercive jurisdiction directly over foreign sovereigns or their agents and instrumentalities. The FSIA is a *jurisdictional* statute which "codifies, as a matter of federal law" the principles of foreign sovereign immunity. *Verlinden B.V. v. Central Bank of*

---

[3] *See also O'Donnell v. Club Mediterranee S.A.*, No. 05-CV-610 (ARR), 2008 WL 794975, at *13 (E.D.N.Y. Mar. 24, 2008) (use of letters rogatory, together with Turks & Caicos rules, permitted defendants to obtain evidence in control of "non-party that is beyond the jurisdiction of this court"); *In re Baycol Products Litig.*, 348 F. Supp. 2d 1058, 1059-60 (D. Minn. 2004) (letter of request through Hague Convention was "the only means available to obtain the requested discovery from Dr. Guariniello, as he is a foreign person that is not a party to this case, and who is not otherwise subject to the jurisdiction of this Court"); *Tulip Computers Int'l. B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) (same).

*Nigeria*, 461 U.S. 480, 488 (1983).  Under the FSIA, a "foreign state is normally immune from the *jurisdiction* of federal and state courts, 28 U.S.C. § 1604, subject to a set of exceptions specified in §§ 1605 and 1607."  *Id.* (emphasis added); *Weltover, Inc. v. Republic*, 504 U.S. 607,610 (1992) (the FSIA "establishes a comprehensive framework for determining whether a court in this country . . . may exercise jurisdiction over a foreign state").  The purpose of the FSIA is to prevent foreign sovereign entities from being haled into a U.S. court to answer claims under U.S. law when they are acting in their capacity as sovereign governments.  *See Verlinden B.V.*, 461 U.S. at 488-89; *see also Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings on H.R. 11315 Before Subcomm. on Admin. Law and Gov't Relations*, 94th Cong., 27 (1976) (testimony of Monroe Leigh, Legal Advisor, Dep't of State) ("The purpose of sovereign immunity in modern international law . . . is to promote the function of all governments by protecting a state from the burden of defending lawsuits abroad which are based on its public acts.").

Because letters rogatory do not involve an exercise of the requesting court's jurisdiction (*i.e.*, power to compel responses), the FSIA as a jurisdictional statute has no bearing here.  Rather, letters rogatory are requests to foreign courts for those courts to exercise *their* jurisdiction (*i.e.*, power to compel responses) to assist the requesting U.S. court in obtaining relevant evidence.  *Int'l Soc. for Krishna Consciousness, Inc.*, 105 F.R.D. at 445. Nothing in the text of the FSIA restricts issuance of letters rogatory to foreign sovereigns, and there is nothing to suggest that Congress intended courts to read into the FSIA an unexpressed, draconian limitation on the long-established ability of federal courts to issue letters rogatory.  *See* 122 Cong. Rec. S8878 (daily ed. Jun. 10, 1976) (statement of Rep. Hruska) ("this bill deals only with jurisdiction"); *United States v. Holroyd*, 732 F.2d 1122,

1125 (2d Cir. 1984) ("when the express language of a statute is clear," courts should "not adopt a different construction absent clear legislative history contradicting the plain meaning of the words").[4]

AECL's argument that Lantheus should not have a greater right to obtain discovery through the letter rogatory process than through a direct subpoena is backwards. Despite being a crown corporation, AECL is routinely subjected to discovery in the Canadian courts.  (Harrison Decl. ¶ 16.)  Given that it is *not immune* to the commercial litigation process in Canada, AECL should not have greater immunity here, particularly in the purely commercial context of the present litigation.  This is especially true where, as in this case, the only issue before this Court is whether a request for assistance to a Canadian court should be made.  In any event, if AECL's argument were accepted, then the routine process of issuing letters rogatory to resolve transnational commercial disputes would grind to halt in many cases.  If AECL is not immune from civil discovery in Canada, it certainly cannot claim immunity from discovery enforced by a Canadian court, using its own powers, in response to a letter request from a U.S. court.

**B.     U.S. and Canadian Courts Routinely Issue Letters Rogatory to Foreign Sovereigns.**

Letters rogatory are an established procedure by which Canadian and U.S. courts assist each other in obtaining evidence relevant to pending judicial proceedings.  The practice in both the United States and Canada is to issue and enforce letters rogatory to

---

[4] Without asking the Court to pass on a question of Canadian law, Lantheus notes that interpreting the Canadian statutory requirement that the court issuing the letters rogatory be a "court of competent jurisdiction" to mean that an issuing court must itself be capable of exercising coercive jurisdiction over the subject of a letter rogatory would render the provision pointless.  If the requesting court could exercise jurisdiction over the subject of the request, it would not need assistance and could compel the production of the evidence by its own process.

foreign sovereigns as a routine matter, including other letters rogatory *seeking discovery from*
**AECL**.  (Korde Decl. Ex. 27, *E-Beam Servs., Inc. v. AECL Technologies, Inc.*, No. 02-2256
(D.N.J. May 14, 2003), slip op. at 1.)  In *E-Beam*, the federal court in New Jersey issued
letters rogatory to obtain the testimony of "former senior officials of AECL" who participated
in the transactions at issue in their capacities as AECL employees.  (Korde Decl. Ex. 28 ¶¶ 6-
9 (Certification filed in *E-Beam*).)  The letters rogatory in *E-Beam* were enforced by the
Ontario Superior Court of Justice shortly after they were issued.  (Harrison Decl. Ex. 4 at 10;
Korde Decl. Ex. 30.)

       Likewise, a federal district court in Arizona issued letters rogatory requesting
the assistance of Saudi Arabian courts in obtaining the testimony of Crown Prince Sultan bin
Abdulaziz Al-Saud, who is, among other things, the First Deputy Prime Minister and Minister
of Defense and Aviation for the Kingdom of Saudi Arabia.  (Korde Decl., Ex. 29, *Al-Misehal
Commercial Group Ltd. v. Armored Group LLC*, No. 2:10-cv-01303 JWS (D. Ariz.) (letter
rogatory).)  The issuance of letters rogatory as to the Saudi Crown Prince belies AECL's
suggestion that U.S. courts would not issue such letters when directly confronted with the fact
that the evidence is sought from a foreign sovereign.  Nothing in that decision suggests that
the parties or the court saw any reason to consider the operation of the FSIA before issuing
the letters rogatory.  Plainly if letters rogatory can issue requesting discovery from the Crown
Prince of a foreign state, in his capacity as a very high ranking member of the government
with responsibility for national defense, a letter rogatory can issue seeking discovery from
AECL, a commercial corporation.  *See also Danisch v. Guardian Life Ins. Co. of Am.*, 19
F.R.D. 235 (S.D.N.Y. 1956) (granting request for issuance of letters rogatory in order to take

discovery from agents of the National Bank of Poland without considering applicability of foreign sovereign immunity).[5]

Nor are United States courts alone in requesting the assistance of foreign courts in obtaining evidence from foreign sovereign entities.  In *Matter of Kevork*, the Ninth Circuit held, and the U.S. Attorney General agreed, that letters of request from the Ontario Supreme Court, seeking testimony from agents of the FBI could be enforced.  788 F.2d 566, 568 (9th Cir. 1986).  Neither the Proposed Amended Letters Rogatory nor the initial Letters raise novel issues of international concern.  These sorts of transnational requests are routine in light of the growing reach of international commerce, particularly the substantial commerce that flows across the United States' border with Canada, with each the other's largest trading partner.

      **C.**      **AECL's Status as a Crown Corporation Is Irrelevant to the Issuance of the Amended Letters Rogatory and Was Known to this Court.**

The Ontario Court accepted AECL's argument that "both experts acknowledge that [the FSIA issues] are relevant issues for the U.S. Court to have considered" before issuing the initial letters rogatory.  The Ontario Court was mistaken to do so.  Lantheus's expert on U.S. law in the Canadian proceedings, Professor David J. Bederman, who teaches international law at Emory University School of Law, in fact rejected the proposition that the FSIA had any bearing on the issuance by this Court of letters rogatory:

> Q:     [Y]ou have stated, as I understand it, that the U.S. District Court was not purporting to exercise jurisdiction over AECL and that the Foreign Sovereign Immunities Act was not implicated in this matter; correct?

---

[5] Although *Danisch* predates the passage of the FSIA in 1976, the courts at the time followed the same theory of sovereign immunity later codified in the FSIA.  *Weltover, Inc.*, 504 U.S. at 612-13.

A.      Correct.

(Harrison Decl., Ex. 6, at 3:17-22).[6]  Because the FSIA "was not implicated in this matter,"

there was no reason to raise AECL's status as a crown corporation with this Court when the

initial Letters Rogatory were sought.  *Cf. Argent Funds Group, LLC v. Schutt*, No.

3:05CV01456 (SRU), 2006 WL 2349464, at *3 (D. Conn. Jun. 27, 2006 ) ("Factors that are

irrelevant to a case . . . need not be addressed.").

In any case, the fact that AECL is affiliated with the Canadian government was

apparent in the record before this Court when it issued the initial Letters Rogatory.  The

record included Lantheus's ATI Request to AECL, submitted on "Government of Canada"

forms, identifying AECL as a "Federal Government Institution," and Lantheus went on to

explain that the ATI Request was made under Canada's analog to the Freedom of Information

Act (FOIA), a statute used to obtain documents from the U.S. federal government.  (Korde

Decl. Ex. 5.)  AECL's contention that this information was insufficient to apprise this Court

of AECL's status as part of the Canadian government is belied by AECL's own assertion

elsewhere that its status as "an agent of a sovereign state" was "patently obvious" to Lantheus

because Lantheus made an ATI Request to AECL.  (Korde Decl., Ex. 16 at 2.)  AECL should

not be heard to argue that this Court failed to understand the very evidence that AECL

contends made its status as an instrumentality of a foreign sovereign "patently obvious."

---

[6] In this respect, Professor Bederman's view is squarely at odds with that of AECL's expert,
Professor David P. Stewart, whose views are unsupported by any case law and in any event
are not entitled to any weight here because it is for this Court to interpret U.S. law.  *Allied
Maritime Inc. v. Descatrade SA*, No. 09 Civ. 3684 (SAS), 2009 WL 4884160, at *1 n.11
(S.D.N.Y. Dec. 16, 2009) ("Because Professor Felsenfeld's declaration did not illuminate any
areas of the New York Uniform Commercial Code ('UCC') with which I was not already
familiar or could not learn through other sources, such as case law and treatises, I am not
considering this declaration.").

## II.     JURISDICTIONAL DISCOVERY WOULD BE NECESSARY TO EVALUATE WHETHER AECL'S COMMERCIAL ACTIVITY DEPRIVES IT OF ANY PURPORTED IMMUNITY.

For the foregoing reasons, it is clear that the FSIA has no bearing on the issuance of letters rogatory.  To the extent, however, that AECL may be permitted to participate in *this* case to make fact-based arguments about purported FSIA immunity, Lantheus seeks an opportunity to obtain jurisdictional discovery from AECL.

Immunity under the FSIA is not absolute.  Under the FSIA's commercial activity exception, "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it," its actions do not enjoy immunity.  *Weltover, Inc.*, 504 U.S. at 614.  The FSIA permits U.S. courts to exercise jurisdiction over foreign sovereigns based "[1] upon an act outside the territory of the United States [2] in connection with a commercial activity of the foreign state elsewhere," if "that act [3] causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2) (2010).  In this case, jurisdictional discovery would be appropriate so that evidence bearing on these three elements can be put before the Court.

**First**, for a foreign government's act outside the U.S. to come within the commercial activity exception, it must be legally significant.  *Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 931 (2d Cir. 1998) (recognizing "a 'legally significant acts' test . . . for the commercial activity exception to apply").  Jurisdictional discovery would be required to determine whether or not the "act," AECL's faulty operation of the NRU Reactor, was legally significant because it was negligent.

**Second**, the FSIA defines "commercial activity" to include "a regular course of commercial conduct" or "a particular commercial transaction."  28 U.S.C. § 1603(d) (2010).  The Supreme Court, in *Weltover*, held that FSIA immunity is lost as soon as the foreign sovereign participates in a commercial market in "the manner of a private actor."  504

U.S. at 617.  Here, jurisdictional discovery would be needed to determine whether AECL's longstanding production of medical isotopes for sale in the stream of international commerce is by its "nature" commercial, 28 U.S.C. § 1603(d) (2010), akin to the sale of "army boots . . . bullets," or bonds, *Weltover, Inc.*, 504 U.S. at 615.

**Third**, jurisdictional discovery would be needed to determine whether or not AECL's apparent negligence in operating the NRU Reactor had a "direct effect in the United States."  28 U.S.C. § 1605(a)(2) (2010).  The Supreme Court has held that "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'" *Weltover, Inc.*, 504 U.S. at 618.  The effect need not be foreseeable or substantial.  *Id.* Lantheus expects that discovery would show that AECL itself was aware that any shutdown of the NRU Reactor would have a significant impact on the radiopharmaceutical industry and medical community in North America, which was dependent upon AECL as the major supplier of molybdenum-99, the raw material for many radiopharmaceutical products used in medical diagnostic procedures.  Such evidence would plainly be sufficient to show a "direct effect" in the United States.  *See Cruise Connections Charter Mgmt., LP v. Attorney Gen. of Canada*, 600 F.3d 661 (D.C. Cir. 2010) (loss of revenue by U.S. plaintiff resulting from termination of commercial contract by foreign sovereign satisfied "direct effect" requirement, triggering the commercial activity exception of the FSIA).

Through letters to the Court dated August 9 and 12, 2011, AECL seeks leave to oppose this motion.  For the reasons set forth above and in its letters responding to AECL (dated August 10 and August 12, 2011), Lantheus does not object to AECL's participation in this case for the purposes of opposing Lantheus's request for amended letters rogatory

*provided* that Lantheus is able to obtain appropriate discovery from AECL on any fact-dependent issues that AECL may raise.

In sum, if the FSIA is deemed applicable to this Court's ability to issue letters rogatory, discovery from AECL would be necessary before this motion could be fairly resolved. *Filus v. LOT Polish Airlines*, 907 F.2d 1328, 1332-33 (permitting plaintiff to take jurisdictional discovery in FSIA case to establish jurisdiction). Such discovery would likely confirm that AECL's actions fall within the ambit of the FSIA's commercial activity exception, and thus that it is not entitled to immunity on this alternative ground.

## III.    AECL'S ARGUMENTS ABOUT CANADIAN LAW ARE IRRELEVANT AND WRONG.

AECL's letters to the Court of August 9 and 12, 2011, while nominally seeking leave to oppose this motion, thrust upon the Court various additional, non-FSIA arguments, concerning Canadian law, which AECL says bear upon Lantheus's request for issuance of Amended Letters Rogatory.  This Court need not consider those arguments as they go to *enforcement* in Canada of Amended Letters Rogatory, not their issuance by this Court.

But even if AECL's non-FSIA arguments are considered, they do not provide reasons why this Court cannot issue the requested amended letters rogatory.  In issuing the original letters rogatory, this Court determined that Lantheus had made the requisite showing that "the evidence sought may be material or may lead to the discovery of material evidence." *Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 Civ. 7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005).  AECL's arguments do not call that determination into question. Plainly, the evidence in AECL's possession remains as critical to the resolution of this case as it was when Lantheus's initial motion was granted.

AECL's arguments are also wrong on the merits.  AECL argues, for example, that the information sought by Lantheus is available from other sources.  But when cross-examined in the Canadian proceedings, AECL's witness admitted that the *documents* sought by Lantheus are *not* publicly available.  (Harrison Decl. Ex. 3, at 49:9-50:9.)  AECL's argument that Lantheus will receive the information it seeks through its ATI Request is similarly misleading.  Lantheus seeks deposition testimony to fill in informational gaps about the NRU Reactor shutdown and establish a foundation for admissibility of documents, and such testimony cannot be obtained through an ATI Request.  The limited documents that AECL has produced in response to Lantheus's ATI Request have been stripped of almost all substance (*e.g.*, Korde Decl. Ex. 9), based upon AECL's unilateral determination that they contain financially sensitive information (Harrison Decl. ¶ 10).  Production in response to letters rogatory under the supervision of the Canadian courts, however, would allow AECL to designate the documents as confidential under this Court's protective order, ameliorating any concerns about the disclosure of financial information that AECL might have, and permitting production of the documents in unredacted format as necessary for the purposes of this case.  Courts use protective orders to facilitate the production of relevant documents when a party asserts that public disclosure may have reputational or other consequences.  AECL cannot not exempt itself from discovery arising out of its participation in a commercial enterprise when it can be adequately protected by such routine measures.

Likewise, AECL's argument that the documents sought by Lantheus are subject to Canada's export control regulations has no factual basis.  When cross-examined, AECL's witness could not identify a single document that was actually subject to Canadian export regulations.  (Harrison Decl. Ex. 3, at 13:24-14:8.)  Nor could AECL's witness identify

a single document that engaged Canada's national security interests in preventing

proliferation of nuclear technology, which is far removed from what Lantheus is seeking.  In

any case, as demonstrated by the Declaration of Mr. Harrison, the documents can be produced

in Canada to Lantheus's Canadian counsel, which is authorized to receive them, and which

can take appropriate steps in the event that it determines that any actual export control issue

exists.  (Harrison Decl. ¶¶ 11-12.)  The Court should reject AECL's attempts to derail crucial

discovery, necessary for the trial of this case, based on nothing more than speculation.

## CONCLUSION

    For the foregoing reasons, Lantheus requests that its Motion to Issue Amended

Letters Rogatory permitting it to seek discovery from AECL in Canada be granted.

DATED:  August 29, 2011                    Respectfully submitted,


                                             s/ Danielle M. Estrada
                                           COVINGTON & BURLING LLP
                                           Andrew A. Ruffino
                                           The New York Times Building
                                           620 Eighth Avenue
                                           New York, N.Y. 10018-1405
                                           Tel: 212.841.1097

                                           William F. Greaney
                                           Joanne B. Grossman
                                           Rukesh A. Korde
                                           Danielle M. Estrada
                                           1201 Pennsylvania Avenue, N.W.
                                           Washington, D.C.  20004-2401
                                           Tel: 202.662.6000

                                           ATTORNEYS FOR PLAINTIFF
                                           LANTHEUS MEDICAL IMAGING, INC.